IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| **ORYN TREADWAY SHEFFIELD, JR., TRUST, ET AL.,** | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:11CV00049 |
| v. | ) ) | **OPINION** |
| **CONSOLIDATION COAL COMPANY,** | ) ) ) ) | By: James P. Jones United States District Judge |
| Defendant. | ) | |

*Ilya I. Berenshteyn, The Senter Law Firm PC, Bristol, Tennessee, for Plaintiffs; James R. Creekmore, Brian S. Wheeler, and Blair N.C. Wood, The Creekmore Law Firm PC, Blacksburg, Virginia, and Jonathan T. Blank and Lisa M. Lorish, McGuireWoods LLP, Charlottesville, Virginia, for Defendant.*

In this diversity action governed by Virginia law, the plaintiffs claim ownership of unidentified minerals contained in a tract of land which is under lease for coal mining purposes to another party. Although active coal production stopped some time ago, it is alleged that the defendant has now used the underground voids left after the coal was mined to dispose of wastewater from another coal mine.

The plaintiffs assert that this use of the mine voids by the defendant entitles them to money damages. The defendant has moved to dismiss on the ground that the plaintiffs have failed to allege any facts showing an ownership interest in the

mine voids or any injury to their property rights. I agree, and will grant the defendant's Motion to Dismiss.

I

In their Amended Complaint, the plaintiffs, the Oryn Treadway Sheffield, Jr. Trust (by John Tolman Sheffield, Trustee) and the John Tolman Sheffield Trust (by Oryn Treadway Sheffield, Jr., Trustee), seek money damages against Consolidation Coal Company ("Consolidation Coal"), alleging causes of action for trespass, conversion, assumpsit and negligence. The defendant has moved to dismiss for lack of standing and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The motion has been briefed and argued and is ripe for decision.

The facts as alleged in the Amended Complaint are as follows.

By deed dated December 4, 1937, Prater Coal Land Company granted to H. Claude Pobst and F.H. Combs "all of the coal, oil and gas as well as all such other minerals, metal, and timber as [Prater Coal Land Company] may own or be entitled to in or upon the lands hereinafter identified, together with all rights, privileges and easements in, on or under [such lands located in Buchanan County, Virginia, as described]." (Am. Compl. Ex. A ("December 4 Deed").)

On December 28, 1937, Pobst and Combs granted by deed to Levisa Coal Corporation ("Levisa Coal"), "all the coal, metals and timber, together with all rights, privileges and easements incident thereto, in, on or under the following described parcels of land. . . ."  (*Id*. Ex. B ("December 28 Deed").)  The parcels of land are the same as described in the December 4 Deed (the "Buchanan parcels"). After this deed, Pobst and Combs each owned a fifty percent interest in the oil, gas and "all other such minerals" in the Buchanan parcels.

On November 16, 1956, Levisa Coal granted by lease to Island Creek Coal Company ("Island Creek Coal"), "the sole and exclusive right and privilege of mining and removing all of the coal from all the seams underlying the Tiller [V]ein or seam of coal or the horizon of such seam" in and upon the Buchanan parcels ("1956 Lease").  (Am. Compl. ¶ 7.)  The 1956 Lease also granted the right "generally, to make any use of the leased premises which [Island Creek Coal] may deem needful or convenient in carrying on its mining or other operations."  (*Id.*)

H. Claude Pobst died in 1965, devising the remainder of his estate to his second wife, Jessie Maie Pobst.  (*Id*. Ex. C ("Pobst Will").)  There was, apparently, some disagreement between Jessie Maie Pobst and Claude Pobst's children over the Pobst Will.  As part of the settlement of that dispute, Jessie Mae Pobst granted to the children a one-half undivided interest "in all of the real property of which the said H. Claude Pobst died seized and possessed, and situate in Buchanan

County. . . ." (*Id*. Ex. G.)  Thereafter, Jessie Maie Pobst owned a twenty-five percent interest in "all other such minerals" in the Buchanan parcels --- the only remaining mineral estate owned by Pobst.[1] (*Id*. ¶ 9.)

Jessie Maie Pobst died in 1989.  Her will provided for two testamentary trusts:  the Oryn Treadway Sheffield, Jr., Trust and the John Tolman Sheffield Trust.  Her will has not been presented as an exhibit but the Amended Complaint asserts that her interest in the remaining Pobst real estate passed to the trusts equally.  (*Id.* ¶ 11.)  Through this chain of title, the plaintiffs together claim a twenty-five percent interest in "all other such minerals" (but not coal, oil, gas, metals or timber) in the Buchanan parcels.

Through its VP3 Mine, Island Creek Coal mined coal from the Buchanan parcels until 1998.  The Amended Complaint alleges that other minerals such as "ore, rock or any other homogeneous crystalline element" were removed during the operation of the VP3 Mine.  (*Id*. ¶ 15.)  In 1998, active coal mining in the VP3 Mine ceased but there are no allegations that the coal is exhausted or that the mine was abandoned.  Island Creek Coal is a subsidiary of Consolidation Coal.  (*Id.* ¶ 16.)  Consolidation Coal owns the Buchanan No. 1 Mine, which is located in close proximity to the VP3 Mine.  (*Id.*)  Around 2006, it is alleged, Consolidation Coal

---

[1] The plaintiffs do not allege that this ownership included any interest in oil and gas.  Apparently, Pobst and Combs conveyed the oil and gas estate to another party by a separate severance deed.  Levisa Coal later acquired the oil and gas interest by lease.  *See Levisa Coal Co. v. Consolidation Coal Co.*, 662 S.E.2d 44, 46 (Va. 2008).

began "dumping hazardous wastewater" from the Buchanan No. 1 Mine into the underground voids created by the VP3 Mine. (*Id.*) The plaintiffs claim that Consolidation Coal needed to find a place for the wastewater because for environmental reasons, it could no longer pump the water into the Levisa River. (*Id.* ¶¶ 16, 17.)

II

At the center of the plaintiffs' claims is their assertion that their twenty-five percent interest in "all other such minerals" in the subject land gives them an ownership interest in the VP3 Mine voids themselves. Each of their claims is based on their alleged ownership interest in these underground mine voids. In opposition, the defendant contends that the plaintiffs lack legal standing to assert these claims because they have not suffered any injury-in-fact. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks and citations omitted). Further, the injury must be causally connected to the conduct complained of and it must be likely, not just speculative, that the injury will be redressed by a favorable decision from the court. *Id.* at 560-61. The question before me is thus whether the plaintiffs have alleged a legally

protected property interest in the voids under Virginia law such that they have standing to bring these claims.

The plaintiffs have asserted various theories for this ownership interest. First, they assert that during its coal mining in the VP3 Mine, Island Creek Coal removed other minerals, i.e. minerals that were part of their ownership estate. (Am. Compl. ¶ 15.)  They claim that under Va. Code Ann. § 55-154.2 (2007), this incidental removal granted them an ownership interest in the mine itself.[2]

Although it is unclear whether that statute applies here at all, since it is limited to "agreements" and "contractual obligations" after 1981, it certainly does not apply in the way asserted by the plaintiffs.  The plain reading of the statute is that when the owner of a particular mineral estate, i.e. coal, opens a mine for the extraction of the coal, that owner shall be presumed to be the owner of the mine

---

[2] Va. Code Ann. § 55-154.2 states:

> Except as otherwise provided in the deed by which the owner of minerals derives title, the owner of minerals shall be presumed to be the owner of the shell, container chamber, passage and space opened underground for the removal of the minerals, with full right to haul and transport minerals from other lands and to pass men, materials, equipment, water and air through such space.  No injunction shall lie to prohibit the use of any such shell, container chamber, passage or space opened underground by the owner of minerals for the purposes herein described.  The provisions of this section shall not affect contractual obligations and agreements entered into prior to July 1, 1981.

voids. In this case, if it applies at all, the statute directs presumption of ownership of the VP3 Mine voids to Island Creek Coal.

The plaintiffs also argue that their property interest in the mine voids was established by the Virginia Supreme Court in *Levisa Coal Co. v. Consolidation Coal Co.*, 662 S.E.2d 44, 46 (Va. 2008), a case also involving the Buchanan parcels. They argue that *Levisa* concluded that because the December 28 Deed did not pass the interest in the voids, neither Levisa Coal nor Island Creek Coal owned the voids and thus, the ownership of the voids stayed with the Pobst/Combs estate. (Pls.' Resp. to Def.'s Mot. to Dismiss 7.)

The *Levisa* decision determined nothing about the ownership of the voids. The *Levisa* court concluded only that, given the status of Virginia law under *Clayborn v. Camilla Red Ash Coal Co.*, 105 S.E. 117 (Va. 1920), the December 28 Deed granting a coal estate with "all rights, privileges and easements incident thereto," did not convey the right to use the mineral estate to support mining operations on other lands. *Levisa*, 662 S.E.2d at 52 ("Since the 1937 deed conveyed no right to use any portion of the mineral estate to support mining operations on other lands, the 1956 lease could not have granted such right to Island Creek Coal."). *Levisa* did not determine the ownership of the mine voids; it determined only the limits of the rights and privileges associated with the coal estate.

*Clayborn* is actually the more informative case on the issue of ownership of the voids. In *Clayborn*, the Virginia Supreme Court addressed the question of whether a trespass had occurred against the property interest of the owner of the surface estate where the owner of the coal estate was using the mine voids to transport coal from adjacent mining operations on other lands. 105 S.E. at 118. The court, going against the majority view, found that the grant of a coal estate is the grant of an estate determinable in the coal only, "with the necessary incidental easement to use the containing walls for support and for the purpose of getting it out. . . ." *Id.* at 119. Once the coal is exhausted, the space it occupied reverts to the grantor by operation of law: "It needs no reservation in the deed, because it was never granted." *Id.* at 120 (internal quotation marks and citation omitted). Therefore, under *Clayborn*, the ownership of the voids lies in the coal estate as long as the coal is not exhausted. Once the coal is exhausted, the ownership of the voids reverts to the grantor. In this case, the plaintiffs have not alleged that the coal is exhausted. Even if the coal were exhausted, the ownership of the voids would not lie with the Pobst and Combs heirs but would revert to the original severance deed grantor or his successors, who are not parties to this case.

Based upon the facts alleged, the plaintiffs do not have any ownership interest in the VP3 Mine voids. Whether Consolidation Coal had the right to use those mine voids to dispose of excess water from another mine is not relevant to

the inquiry here. The question is whether the plaintiffs have legal standing to object to that use. To the extent the plaintiffs' claims are based upon ownership of the voids, they will be dismissed for lack of standing.

III

Although the plaintiffs' claims are grounded in their claim to ownership of the voids, they have also alleged harm to their property interest in the twenty-five percent of "all such other minerals" as may be found in the Buchanan parcels. The plaintiffs trace their claimed mineral estate to the "all other such minerals" clause in the December 4 Deed. This clause is the only specific reference to the estate in the entire chain of title. The coal, gas, oil, metals and timber estates were expressly granted to entities other than the plaintiffs. The plaintiffs have not alleged ownership of the surface estate. Based upon the alleged chain of title, the plaintiffs have sufficiently alleged a basic property interest in "all other such minerals" in the Buchanan parcels. However, they have not alleged any facts sufficient to state a claim for relief against Consolidation Coal.[3]

---

[3] This issue could also be analyzed as a question of standing to assess whether the plaintiffs sufficiently allege facts to show that they have suffered a plausible injury-in-fact. However, because the plaintiffs have sufficiently alleged a legally protected property interest in "other minerals," the question of whether they have standing hinges on whether they have alleged sufficient facts to show a concrete, particularized and imminent invasion of that property interest. The required analysis is similar to assessing whether the plaintiffs have alleged sufficient facts to state a claim of trespass or

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The plausibility standard requires that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570.) If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then the complaint has not shown that the plaintiffs are entitled to relief. *Id.* at 1950.

The failure of the Amended Complaint is that although the plaintiffs state a technical property interest in "all such other minerals" in the Buchanan parcels, they allege no facts showing that there are any "such other minerals," what they are, where they are, that they have been physically affected by the inundation of the VP3 Mine, or how plaintiffs' interest in them has been damaged by the inundation of the mine.[4] There are no facts set forth showing that the disposal of

---

negligence. Because the standing issue is intertwined with issues central to the merits of the claims, I will assess the plaintiffs' claims of injury to their interest in the "other minerals" under Rule 12(b)(6). *See Pitt Cnty. v. Hotels.com, L.P.*, 553 F.3d 308, 312 (4th Cir. 2009).

[4] The other minerals would not include dirt, soil, sand or gravel. Such things are treated as distinct from minerals under Virginia law. *See* 13A Michie's Jurisprudence,

wastewater has affected or damaged those other minerals.[5]  For example, the plaintiffs have not plausibly alleged that the inundation of the VP3 Mine adversely affected their ability to commercially exploit any of the "other minerals."[6]

Thus, the plaintiffs' trespass claim fails because they have not alleged facts making it plausible that the inundation of the VP3 Mine physically invaded their mineral interest.  *See Cooper v. Horn*, 448 S.E.2d 403, 406-07 (Va. 1994).  Similarly, the plaintiffs' claims of conversion, assumpsit and negligence all require factual allegations making it plausible to conclude that there are actually recoverable minerals in the ground and that the inundation did something injurious to those minerals.  It is possible that the disposal of water may have damaged some

---

*Mines and Minerals* § 3 (2003).  The plaintiffs' boilerplate list of possible minerals that could have been removed incidental to the coal mining (Am. Compl. ¶ 4) is not a sufficient basis to sustain the action.  Indeed, at oral argument counsel for plaintiffs conceded that they do not know what the other minerals are, if any.  (Mot. to Dismiss Hr'g Tr. 15, Sept. 22, 2011.)

[5] In its response to the Motion to Dismiss, the plaintiffs argued that the defendant was trespassing "on all other minerals that constitute the walls, floor, ceiling, tunnels, and shafts of the VP3 Mine."  (Pls.' Resp. to Def.'s Mot. to Dismiss 10, ECF No. 19.)  But they have alleged no actual facts about the "other minerals" that ground this statement in the realm of the plausible.  More importantly, the fact that the water may have incidentally touched "other minerals" is not the same as asserting a plausible claim that the plaintiffs' right of possession was interfered with by Consolidation Coal, the essence of a trespass action.  *See* 5 Richard R. Powell, *The Law of Real Property* ¶ 707 (Patrick J. Rohan ed. 1994).

[6] At oral argument, counsel for the plaintiffs did state that because the water was placed in the mine voids, it was "touching all [the plaintiffs'] other minerals.  I can't go in and get them.  I don't know what it's going to be worth at one time.  Maybe at one time rock will become expensive."  (Mot. to Dismiss Hr'g Tr. 15, Sept. 22, 2011.)

of the "other minerals" but, on the basis of the facts alleged, that is only a speculative possibility. The *Levisa* case is again informative. The Virginia Supreme Court found that Levisa Coal had put forth enough evidence regarding its property interests subject to harm by the inundation to have standing to seek an injunction. *Levisa*, 662 S.E.2d at 52. There was specific evidence before the court that the inundation of the VP3 Mine would potentially damage Levisa Coal's interests in coalbed methane and other gases. *Id.* At this stage of the proceedings, of course, the plaintiffs are not required to present proof or adduce evidence. They are required, however, to plead facts stating a plausible claim.

As counsel for the plaintiffs candidly admitted in oral argument, the plaintiffs really do not expect to prove any actual injury to the "other minerals" in this case. (Mot. to Dismiss Hr'g Tr. 19, Sept. 22, 2011.) Rather, the heart of the present lawsuit is its so-called assumpsit claim, by which the plaintiffs seek damages for unjust enrichment by the defendant. In other words, they want Consolidation Coal to pay them the money it saved by discharging wastewater from the Buchanan No. 1 Mine into the VP3 Mine, rather than using some more expensive method of disposing of the excess mine water. The plaintiffs calculate this saving to have been twenty-two million dollars, based upon a calculation of the cost of trucking the water away. (Am. Compl. ¶ 39.) This claim, as with the

others, depends upon a plausible assertion of ownership of the mine voids, which the plaintiffs have not made.

## IV

Because the plaintiffs' lack standing to bring any claims based on an ownership interest in the VP3 Mine voids and because the Amended Complaint fails to state a claim against Consolidation based on the plaintiffs' ownership interest in the "other minerals," the defendant's Motion to Dismiss will be granted.

A separate order will be entered herewith.

DATED:   October 19, 2011

/s/ James P. Jones
United States District Judge